**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

A.L., a minor child, by and through
her natural mother and next friend,
MARY JEAN LeBLANC,

    Plaintiff,

vs.                                                CASE NO. 3:09-cv-1240-J-32TEM

STATE OF FLORIDA, DEPARTMENT
OF CHILDREN AND FAMILIES,
PARTNERSHIP FOR STRONG FAMILIES,
INC., a Florida non-profit corporation,
JENNIFER CRAPSE, an individual, PAULA
ALLEN, an individual, TRICIA WESTLAND,
an individual, and THE DEVEREUX
FOUNDATION, INC., a foreign non-profit
corporation

    Defendants.
_____/

## REPORT AND RECOMMENDATION[1]

This matter has been referred to the undersigned for issuance of a Report and Recommendation regarding Defendants' (Jennifer Crapse, Paula Allen, and Tricia Westland–hereinafter collectively referred to as "Defendants") Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. #38, Motion) and Plaintiff's response in opposition thereto (Doc. #39). For the reasons stated herein, the undersigned will **RECOMMEND** that the Motion be **DENIED**.

---

[1] Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation. Failure to file a timely objection waives a party's right to a *de novo* review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Local Rule 6.02(a), United States District Court for the Middle District of Florida.

I.   **Statement of the Subject Claim(s)**

Plaintiff, A.L., a minor child, by and through her natural mother and next friend, Mary Jean LeBlanc ("LeBlanc"), filed a third amended complaint (Doc. #32, Complaint) against the State of Florida Department of Children and Families ("DCF"), Partnership for Strong Families, Inc. ("PFSF"), and The Devereux Foundation ("Devereux") with respect to alleged negligence in relation to foster care placement (*see* Doc. #32-1).  The Complaint additionally asserts claims against Defendant Crapse ("Crapse"), Defendant Allen ("Allen"), and Defendant Westland ("Westland"), pursuant to 42 U.S.C. §1983, to remedy an alleged deprivation, under color of state law, of the rights guaranteed by the Fourteenth Amendment to the United States Constitution (*see* Doc. #32-1, Counts IV, V, and VI).

By way of background, DCF contracted with PFSF pursuant to the authority provided in Florida Statutes, Section 409.1671, to assist in providing foster care placement to children that are the responsibility of the State of Florida (Doc. #32-1 at ¶ 6).  B.S., age eight, was placed in foster care with his maternal uncle, who resided in LeBlanc's residence (Doc. #32-1 at ¶ 32).  LeBlanc's child, A.L., age three, also resided in LeBlanc's residence (Doc. #32-1 at ¶ 2).  LeBlanc alleges that prior to placement in her home, B.S. had been the victim of sexual abuse and had perpetrated one or more acts of child-on-child sexual abuse (Doc. #32-1 at ¶ 33).  LeBlanc contends that this was known to Defendants prior to B.S.'s placement in her home, and that between November 8, 2007 and May 19, 2008, while residing in LeBlanc's home, B.S. sexually abused A.L (Doc. #32-1 at ¶¶ 34 and 35).  LeBlanc maintains that Allen and Westland were employed by Devereux as family care

counselors (Doc. #32-1 at ¶¶ 11 and 17), and that Crapse was employed as a family care counselor supervisor (Doc. #32-1 at ¶ 14).[2]

It is alleged that, on or before November 8, 2007, Allen, Crapse, and Westland approved B.S. for placement with his maternal uncle, A.L.'s father, in the foster home (Doc. #32-1 at ¶ 39). B.S. entered the home on November 8, 2007 and remained there until his removal on May 19, 2008 (Doc. #32-1 at ¶ 32). LeBlanc contends that at no time prior to the placement of B.S. in their home were they notified by any of the Defendants as to the relevant sexual history of B.S., and that no family safety plan was ever developed or put into place (Doc. #32-1 at ¶¶ 32-43).

LeBlanc maintains that Crapse, Allen, and Westland created and maintained a dangerous condition in their home by: (1) failing to notify them that B.S. had a history of sexual abuse and had perpetrated one or more acts of child-on-child sexual abuse; (2) failing to put in place a family safety plan; (3) failing to ensure that younger children in the foster home would not be victimized by a child with a history of sexual abuse and/or perpetration; and (4) allowing B.S. to be placed into, and remain in, their home–knowing that B.S. had a history of sexual abuse and had perpetrated one or more acts of child-on-child sexual abuse (Doc. #32-1 at ¶¶ 74, 82 and 90).

---

[2]Plaintiff asserts that, as family care counselors, Defendants had the authority and responsibility to, *inter alia*: (1) ensure that vulnerable children in foster homes were not subjected to an elevated risk of harm from child-on-child sexual abuse due to the placement of a foster child; and (2) adequately warn the parents of children in the foster home if a potential foster child had previously been the victim of sexual abuse, and whether the potential foster child had perpetrated child-on-child sexual abuse, so that the parents could make an informed decision as to whether to allow said foster child into their home, or to effectuate measures to reduce the risk of harm to the other children in the home (*e.g.*, develop a child safety plan) (Doc. #32-1 at ¶¶ 22, 25, 28, 40, and 41).

LeBlanc further contends that Defendants' actions, or lack thereof, were done with knowledge that such actions would deprive Plaintiff of her constitutional rights (Doc. #32-1 at ¶¶ 75, 83 and 91). LeBlanc alleges that Crapse, Allen, and Westland were either deliberately indifferent to said conditions or that they knowingly and recklessly failed to take any action to help ensure Plaintiff's safety (Doc. #32-1 at ¶¶ 76, 84 and 92).

## II. Standard of Review

On a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, courts must view the complaint in the light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). Thus, "when ruling on a defendant's motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89 (2007). The rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint attacked by a Rule 12(b)(6) motion need not be buttressed by detailed factual allegations, the plaintiff's pleading obligation "requires more than labels and [legal] conclusions." As a general proposition, the rules of pleading do "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Twombly* applies to § 1983 actions. *Douglas v. Yates*, 535 F.3d 1316 (11th Cir. 2008). As the Eleventh Circuit has explained, "[w]e understand *Twombly* as a further articulation of the standard by which to evaluate the sufficiency of all claims brought pursuant to Rule 8(a)." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 n. 43 (11th Cir. 2008).

A complaint may not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." *Lopez v. First Union Nat'l Bank*, 129 F.3d 1186, 1189 (11th Cir. 1997) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). On a motion to dismiss, courts are to limit their considerations to the pleadings and exhibits attached thereto. *GSW v. Long County, Georgia*, 999 F.2d 1508, 1510 (11th Cir. 1993).

### III.  Discussion

#### A. Whether Defendants are State Actors

In support of the Motion, Defendants maintain that they are not state actors because they were employed by a private company that merely contracted with the government to assist in providing foster care services; thus, they are not subject to a claim under 42 U.S.C. § 1983 (Doc. #38 at 5-8, 10-12). The undersigned is not persuaded.

To illustrate, the Supreme Court has articulated three tests to determine whether state action is at issue: (1) the public function test; (2) the state compulsion test; and (3) the nexus/ joint action test. *NBC v. Communications Workers of America, AFL-CIO*, 860 F.2d 1022, 1026 (11th Cir. 1988). Under the applicable motion to dismiss standard, the undersigned finds Plaintiff's Complaint contains facts that sufficiently suggest state action under, at least, the public function doctrine.

More particularly, contrary to Defendants' argument, the State of Florida has traditionally been responsible for providing foster care services, which includes the placement of foster children into foster homes. The Florida legislature stated as much in Florida Statutes, Section 409.1671(1)(f)1, which in pertinent part reads as follows: "[t]he Legislature finds that the state has traditionally provided foster care services to children

who have been the responsibility of the state." The Florida legislature only recently granted DCF authority to "outsource" such services to private providers. *See* Fla. Stat. § 409.1671.

Plaintiff maintains that one such provider, Defendant Devereux Foundation, Inc. ("Devereux"), employed Defendants to assist in the provision of foster care services, which includes the placement of foster children in foster homes (Doc. #32-1 at ¶¶ 6, 27, 33). Pursuant to agreement with the State of Florida, Defendants assumed both the authority to carry out the tasks traditionally performed by the state, as well as the concomitant obligation to do so in compliance with all applicable laws and traditional guidelines created for such purpose (Doc. #32-1 at ¶¶ 27-29, 33-35).

In the Complaint, Plaintiff claims that Defendants violated a litany of the applicable laws and regulations related to their provision of foster care services–which have traditionally been a function of the state (*see* Doc. #32-1 at ¶¶ 20-78). The undersigned would note that courts have made a distinction between foster care services and the day-to-day care of foster children, which is a function traditionally performed by members of the community or charitable institutions. *See Harris v. Litz*, 418 F. Supp. 2d 643, 651 (E.D. Pa. 2005) (finding private foster care agency acted under color of state law when it placed a foster child in a foster home); *Barron v. Washington County Children and Youth Social Service Agency*, No. 05-1517, 2006 WL 931678, at *3-*6 (W.D. Pa. Apr. 11, 2006) (distinguishing day-to-day care of foster children from supervision of foster parents)[3]; *c.f.*, *Leshko v. Servis*, 423 F.3d 337, 347 (3rd Cir. 2005) (holding foster parents in Pennsylvania are not state actors for purposes of liability under 42 U.S.C. § 1983).

---

[3]Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

Based on the foregoing, the undersigned finds the Complaint sufficiently asserts that Defendants were state actors pursuant to 42 U.S.C. § 1983.

### B. Whether Defendants are Entitled to Immunity

Defendants maintain that they are entitled to statutory immunity because, pursuant to state law, any liability of Devereux, as a subcontractor to PFSF, a lead community-based provider, is exclusive and in place of all other liability of any such provider (Doc. #38 at 9). *See* Fla Stat. § 409.1671.  Defendants cite Florida Statutes, Section 409.1671(k), which provides, "[t]he same immunities from liability enjoyed by such [lead community-based] providers shall extend as well to each employee of the provider when such employees are acting in furtherance of the provider's business . . ."  There is, however, an exception to said statutory immunity; namely, if an employee "acts in a culpably negligent manner or with willful and wanton disregard or unprovoked physical aggression when such acts result in injury or death or such acts proximately cause such injury or death. . . ."  Fla. Stat. § 409.1671(k).  Culpable negligence is defined as reckless indifference or grossly careless disregard of human life.  Fla. Stat. § 409.1671(k).

Defendants claim their alleged conduct does not rise to the level of either culpable negligence or a reckless or willful disregard of Plaintiff's constitutional rights (Doc. #38 at 10).  Specifically, Defendants maintain they enjoy immunity from suit in this instance because Plaintiff's allegations of deliberate indifference are insufficient to defeat the statutorily immunity, *supra* (Doc. #38 at 8-10).  The undersigned is not persuaded.

Defendants cite *H.A.L. v. Foltz*, 551 F.3d 1227 (11th Cir. 2008) in support of their contention in this regard.  Their reliance on this case, however, is misplaced.  *H.A.L.*, as applied to the pleaded facts of this case, actually reiterates that Defendants were on notice

that their alleged conduct would be considered to be a deliberate indifference to a clearly established due process right of Plaintiff to be reasonably safe from sexual abuse.[4]  See id. at 1231-32; see also Taylor v. Ledbetter, 818 F.2d 791 (1987) (en banc).

To illustrate, the plaintiffs in H.A.L. alleged that the defendants knowingly placed the plaintiffs in a home with a known sexual aggressive child who had previously perpetrated child-on-child sexual abuse without implementing a safety plan.  Id. at 1232.  The court found that such factors demonstrated that the defendants actually knew, and were deliberately indifferent to, the substantial risk of the plaintiffs being sexually abused in the foster home.  Id.  Defendants maintain that they are entitled to immunity, based on H.A.L., because "[t]here is no allegation that they [Defendants] were aware A.L. was being abused by B.S. and turned a blind eye to the abuse by allowing him to remain in the home" (Doc. #38 at 10).  The H.A.L., court, however, stated succinctly,

> the issue here is not whether Defendants actually knew or drew the inference that Plaintiffs were [in fact being] sexually abused: it is whether Defendants–who could have (among other things) removed Plaintiffs from the [foster] home–actually knew, and were deliberately indifferent to, a substantial risk of Plaintiffs being sexually abused in the [foster] home.

551 F.3d at 1232.

Based on the foregoing, the undersigned finds Plaintiff's allegations of deliberate indifference, as pleaded, are sufficient to overcome Defendants' Motion to dismiss based on statutory immunity.

---

[4] While the H.A.L. decision involved employees of the Florida Department of Children and Families, rather than private individuals, the undersigned has found Plaintiff's Complaint sufficiently asserts that Defendants were state actors pursuant to 42 U.S.C. § 1983, supra.

### IV. Conclusion

Based on the foregoing, the undersigned finds that, at the pleading stage, Plaintiff has sufficiently alleged that Defendants did know about B.S.'s propensity to perpetrate child-on-child sexual abuse and that, despite their authority to act, Defendants took no steps to warn the foster parents or otherwise guard Plaintiff from being a victim of sexual abuse.

Thus, it is hereby **RECOMMENDED**:

Defendants' (Jennifer Crapse, Paula Allen, and Tricia Westland) Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. #38) be **DENIED**.

**DONE AND ENTERED** at Jacksonville, Florida this 28th day of January, 2011.

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to all counsel of record
and *pro se* parties, if any